Nasredin **JOEHAR**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

No. 90–1575.

United States Court of Appeals, District of Columbia Circuit.

Decided March 10, 1992.

---

David Goren, Washington, D.C., for petitioner.

David J. Kline and James A. Hunolt, Dept. of Justice, Office of Immigration Litigation, Civ. Div., Washington, D.C., *for respondent.*

Before MIKVA, Chief Judge, RUTH B. GINSBURG and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

The Immigration and Naturalization Service ordered the petitioner Nasredin Joehar deported and later denied his motion to reopen the deportation proceeding against him. While Joehar's petition for review of that decision was pending in this court, he voluntarily left the United States. Three weeks later the INS denied him re-entry, and now moves to dismiss his petition for review. We grant the INS's motion to dismiss Joehar's petition on the ground that, because Joehar left the country, § 106(c) of the Immigration and Nationality Act, 8 U.S.C. § 1105a(c), precludes our review of the decision not to reopen his deportation proceeding.

## I. BACKGROUND

Nasredin Joehar, a/k/a Nasredin Mohammed, a native of Sudan and a citizen of Ethiopia, was admitted into the United States in 1975 as a student. He was subsequently granted asylum and in 1980 became a permanent resident. In 1984 Joehar was convicted of possession with intent to distribute an illegal drug. He served a term in prison and was then released on probation.

Following his release, the INS ordered Joehar deported because he had been convicted of a drug crime. *See* 8 U.S.C. § 1251(a)(11). He applied for discretionary relief from deportation pursuant to § 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c). An Immigration Judge concluded that the equities in Joehar's case, although "substantial," were not "outstanding" in view of the recency of his conviction, the relatively short time he had been in the country, and the absence of hardship deportation would impose upon Joehar or his relatives living in the United States.

The Board of Immigration Appeals agreed with the Immigration Judge and denied Joehar's application for a waiver of deportation. Joehar then filed a motion to reopen the deportation proceedings. When the Board denied that motion, he filed the present petition for review.

In January 1991, while his petition for review was pending in this court, Joehar went to Canada. Three weeks later, when he sought to re-enter the United States from Toronto, the INS ordered him excluded because of his drug conviction. *See* 8 U.S.C. § 1182(a)(23)(A) (repealed effective 1991); id. § 1182(a)(2)(A). As of the time that the INS moved this court to dismiss his case, Joehar was still in Canada and had asked the INS to parole him to the United States so that he could participate in the exclusion proceedings against him.

## II. ANALYSIS

The INS maintains that Joehar's departure from the United States after the entry of a deportation order forecloses our re-

view of his case. Section 106(c) of the Immigration and Nationality Act indeed provides that "[a]n order of deportation ... shall not be reviewed by any court if the alien ... has departed from the United States after issuance of the order." 8 U.S.C. § 1105a(c). "The legislative mandate is clear." *Quezada v. INS,* 898 F.2d 474, 476 (5th Cir.1990); *accord Saadi v. INS,* 912 F.2d 428 (10th Cir.1990).

In response, Joehar argues only that "whether [his] deportation proceedings should have been reopened affects his future status with respect to re-entry into the United States." At most, however, this observation could establish only that his case is not moot. In *Asai v. Castillo,* 593 F.2d 1222, 1224 n. 2 (D.C.Cir.1978), a brief *per curiam* opinion from which the petitioner takes the "future status" formula, the court upheld on the merits a BIA decision denying motions to reopen the deportation proceedings of certain aliens who had left the country. Although the petitioners' own counsel "suggested that the petition for review [was] moot as to those petitioners who [had] departed from the United States under orders of deportation," the court in a footnote gratuitously asserted otherwise on the ground that the disposition of their motions to reopen "might affect their future status with respect to re-entry into the United States under the immigration laws."

Whatever the significance of that assertion, addressed as it was to an issue apparently conceded rather than contested, it is simply not responsive to the argument of the INS in this case. The Government's argument is not that Joehar's petition is moot and therefore beyond the constitutional power of an Article III court; rather, the Government's point is that under § 106(c) of the Immigration and Nationality Act the court is without statutory jurisdiction to consider Joehar's petition. *See Umanzor v. Lambert,* 782 F.2d 1299, 1301 n. 2 (5th Cir.1986) ("Whether there exists an Article III case or controversy, and thus Constitutional subject-matter jurisdiction, is analytically distinct from whether [§ 106(c) ] confer[s] statutory subject-matter jurisdiction"). Section 106(c) is un-

equivocal in precluding review of "an order of deportation" following the alien's "depart[ure]."

Having conceded that his crossing the border into Canada amounts to a "departure," *cf. Rosenberg v. Fleuti,* 374 U.S. 449, 462–63, 83 S.Ct. 1804, 1812, 10 L.Ed.2d 1000 (1963) (permanent resident's return from a two-hour trip to Mexico may not be an "entry" sufficient to subject alien to exclusion, rather than deportation, proceeding), the only possible out for Joehar is to argue that review of an order denying a motion to reopen a deportation proceeding is not equivalent to review of "an order of deportation" within the intended prohibition of judicial review in § 106(c). Joehar offers no functional distinction to this end, however, and we see in that direction only disruption of the Congress's scheme for regulating alienage. If his reliance upon *Asai* is meant to adopt the distinction drawn there, it is of no avail. An order of deportation "affect[s an alien's] future status with respect to re-entry into the United States" at least as much as does denial of his motion to reopen the deportation proceeding. *See also* 8 C.F.R. § 3.2 (precluding administrative review of motion to reopen once alien has departed from the United States).

That Joehar has lived in the United States for 16 years, left the country voluntarily for a mere three-week visit to Canada, and clearly had no intention of abandoning his case thereby, all may emphasize the harshness of the statute, but cannot soften its preclusive effect. *See, e.g., Thorsteinsson v. INS,* 724 F.2d 1365, 1367 (9th Cir. 1984) (voluntary departure from the United States and attempted re-entry three weeks later). If there is any exception to the strict rule that a nonresident alien may not seek judicial review of a deportation proceeding, it involves an allegedly "illegally executed" deportation. *See Estrada–Rosales v. INS,* 645 F.2d 819, 820–21 (9th Cir.1981); *Mendez v. INS,* 563 F.2d 956, 958 (9th Cir.1977). *But see Umanzor,* 782 F.2d at 1303 n. 5 ("*Mendez* has become a sinkhole that has swallowed the rule of § 1105a(c)"). Having departed the country

voluntarily, however, Joehar cannot assert such a claim here, and we venture no opinion upon the validity of that putative exception.

### III. Conclusion

Because Joehar departed the United States, judicial review of the INS order denying his motion to reopen the deportation proceeding against him is foreclosed under 8 U.S.C. § 1105a(c). Accordingly, his petition for review is

*Dismissed.*